Steel *v.* Brown.

---

STEEL, Defendant in Error, *vs.* BROWN, Plaintiff in Error.

1. A bill of sale stated that B. had sold to S. "a negro woman named Lucy, for a slave during life, aged forty-one or two years, *stout* and *healthy*." *Held*, the words "stout and healthy" constituted a warranty of soundness.

*Error to Saline Circuit Court.*

Action on an alleged warranty of soundness in the sale of a slave. The defendant denied the warranty, but insisted that the slave was sound. There was a trial by jury, conflicting evidence on the question of soundness, and a verdict for the plaintiff. The bill of sale was in these words :

"January 6, 1852.

"I, James B. Brown, have this day bargained and sold to Mr. Joseph B. Steel, a negro woman named Lucy, for a slave during life, aged forty-one or two years, stout and healthy, for the sum of three hundred dollars, in bonds paid in han .

"JAMES B. BROWN."

Steel *v.* Brown.

The bill of sale was the only evidence of warranty. The court directed the jury that the words " stout and healthy" in the bill of sale, constituted a warranty of soundness, and that this was a question of law for the court, and not a matter for the jury. The defendant brings the case here by writ of error.

*A. Leonard,* for plaintiff in error. 1. At common law, the seller of personal property is not liable for the soundness of the thing sold, unless there be fraud or an express warranty. *Chandler* v. *Lopus,* 1 Smith's Leading Cases. *Parkinson* v. *Lee,* 2 East, 314. *Moses* v. *McFarland,* 9 Watt, 55. *Seixas* v. *Wood,* 2 Caines, 55. *Moses* v. *Mead,* 1 Denio, 385. *Emerson* v. *Brigham,* 10 Mass. 207. 2. Although no particular words are necessary to constitute a warranty, yet it must appear that the seller intended to make himself responsible, if the thing sold were different from what he represented. A mere affirmation of a fact, without any thing more, is neither a warranty, nor any evidence of a warranty. It is not an agreement nor evidence of an agreement. Same cases cited above. *Sweet* v. *Colgate,* 20 J. R. 203. *Foster* v. *Caldwell,* 18 Vt. Rep. 176. *Soper* v. *Breckinridge,* 4 Mo. Rep. 14. *Smith* v. *Miller,* 2 Bibb, 616. *Bacon* v. *Brown,* 3 Bibb, 35. 3. If a mere affirmation must be taken *prima facie* as a warranty, yet here, from the very nature of the subject, the affirmation cannot be any thing more than a mere representation of the seller's opinion. That the slave was sound could only be matter of opinion and not of positive knowledge. If he *knew* she was unsound, he is liable for deceit.

*Hayden,* for defendant in error. The bill of sale contains an express warranty. The word " warranty" was not used, nor is it necessary. If the statement that the slave was " stout and healthy" formed a part of the contract, then it was a warranty. That it did form a part of the contract is evident. 1 Smith's Leading Cases, 229, and authorities there cited.

HARVARD LAW SCHOOL LIBRARY

RYLAND, Judge, delivered the opinion of the court.

1. The only question in this case arises on the construction of the bill of sale of Brown to Steel for the negro woman. This bill of sale is as follows : " January 6th, 1852. I, James B. Brown, have this day bargained and sold to Mr. Joseph B. Steel, a negro woman named Lucy, for a slave during life, aged forty-one or two years, stout and healthy, for the sum of three hundred dollars, in bonds paid in hand. James B. Brown."

There are no particular words necessary to be used in order to constitute a warranty. If, in this case, the statement in the bill of sale, that the negro woman was " stout and healthy," formed a part of the contract, then it is a warranty. The vendor here says, I have sold to Joseph B. Steel, a negro woman " for a slave," " during life," " stout and healthy." Is there, or can there be a doubt that the statement in the bill of sale " for a slave during life" is a warranty of servitude ? Does not the phrase, " for a slave during life" enter into and make part of the contract ? The negro woman is sold for a slave during her life—Brown sells her to Steel as a slave for life—the duration of servitude forming a part of and entering into the contract of sale. There can be no doubt of this. Now let us examine this bill of sale a little further. The negro woman is sold " for a slave during life," " stout and healthy ;" now this last phrase, " stout and healthy" forms a part of the contract, as much as the one just preceding it, concerning servitude. Brown sells her, not only as a slave during life, but sells her as a slave, " stout and healthy." He sells the woman for a slave, stout and healthy. Ask the question, what kind of a slave did Brown contract with Steel for ; and, from the words used in the bill of sale, it becomes obvious that the woman sold was not only a slave during life, but was a stout and healthy slave. She was sold as well " for a stout and healthy slave," as she was for a " slave during life."

This bill of sale, then, contains a warranty of soundness. Such being the opinion of this court, it becomes useless to refer to and examine the various authorities in regard to "affirmations" and "representations" in contracts for personal property.

In the case of *Soper* v. *Breckinridge*, 4 Mo. Rep. p. 14, the bill of sale was as follws : "For and in consideration of the sum of two hundred and sixty-seven dollars and fifty cents, I have this day sold unto Benjamin Soper, one negro girl named Dinah, sound in body and mind, and slave for life. I bind myself to warrant and defend the right and title of said negro from all and every person or persons whatsoever. Given under my hand this 7th day of September, 1833. Signed, Eddy L. Breckinridge." This court, in delivering its opinion, cited the case from 2 Bibb, 616—*Smith, for the benefit of Norton,* v. *Miller.* This Kentucky case had the following as the contract of sale : "Received of William Smith, of Lexington, three hundred dollars, for a negro boy named Abram, which negro is sound and healthy, and I warrant the title of said boy against the claim or claims of any person whatsoever, as witness my hand," &c. The court of appeals of Kentucky, in its opinion, says : "It becomes necessary to enquire whether the writing produced is an undertaking on the part of the appellee, that the negro was sound and healthy. That the appellee did not intend warranting the negro sound, we think evident from the writing. It contains an acknowledgment of the receipt of the money for which the negro was sold, a representation that he was sound, and an express warranty of title. Had the appellee intended to warrant the negro sound, it is most reasonable to suppose the warranty would have been so worded as to embrace it. This not having been done, evinces, clearly, an intention to warrant the title only." After quoting as above, from the case of *Smith* v. *Miller*, this court proceeded thus : "This is precisely what we think in the present case. The vendor has manifested a purpose to warrant the title, about which he could know and judge correctly, and

of which the vendee may reasonably be supposed to know nothing ; whilst, in regard to the health of the negro, which the vendee had the means of ascertaining, and of which he might have judged as well or better than the vendor himself, he makes a simple statement, or affirmation, if you will, in which the vendee might or might not have confided. The intention of the parties, in every such case, should govern, and prove the distinction taken between the health and condition of the negro and the title, and the express warranty of the title. We feel concluded from inferring, from the first clause of the bill of sale, an agreement to warrant the girl sound in body and mind, &c. No particular phraseology is requisite to constitute a warranty ; any representation of the state of the thing sold, or any direct or express affirmation by the vendor, of its quality and condition, and *showing an intention to warrant* its soundness, will be sufficient. But in this case, the intention is not left to be inferred, (as we think) from the affirmation that the girl was sound in body and mind, but is *shown clearly* by the clause of warranty applied to the title as before stated." In this case of *Soper* v. *Breckinridge*, Judge McGirk, the ablest lawyer on the bench, at that time, differed from his brethren, about the warranty. He said : "I am of opinion, that the words contained in the bill of sale do amount to a warranty, as much as if the seller had said, 'I warrant, or I promise the slave is sound.'"

Applying the rule of construction as laid down by this court, in the case of *Soper* v. *Breckinridge*, and the principles therein maintained, and that case is an authority for pronouncing that the bill of sale, in this case, now before the court, contains a warranty of soundness of the negro woman ; and such is the unanimous opinion of this court.

The judgment of the court below is affirmed accordingly.